```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

ROBERT WILLIAM KOCH,
in has capacity as Administrator of the
ESTATE OF DAVID GLENN KOCH,
a deceased person; and ANTHONY TUCKER,
in his capacity as Administrator of the
ESTATE OF RODERICK COOK                                    PLAINTIFFS

              v.           Civil No. 06-5200

SOUTHWESTERN ELECTRIC POWER COMPANY,
A Delaware Corporation doing business in the
State of Arkansas                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

NOW on this 14th day of January, 2008, comes on for this Court's consideration the pleading styled: **Southwestern Electric Power Company's Motion for Summary Judgment Against the Plaintiffs** (document #30). The Court, having reviewed the pleadings of the parties relating to the said motion, and all other matters of relevance before it, and being well and sufficiently advised, finds and orders as follows:

1.   Plaintiffs commenced this action in October of 2006, alleging that plaintiffs' decedents, David Glenn Koch and Roderick Cook, were fatally electrocuted when a tent they were moving came into contact with an energized electric distribution line owned by Southwestern Electric Power Company (SWEPCO). The plaintiffs allege that SWEPCO was negligent; that its negligence proximately and directly caused the deaths of Koch and Cook; and that plaintiffs are entitled to damages and other relief from SWEPCO by reason thereof.

SWEPCO has now moved for summary judgment.  The plaintiffs oppose SWEPCO's motion.

2. The standard to be applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56©; *see also* Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); *see also* Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256.  The non-moving party must "make a sufficient showing on every essential element

of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

 3. For the purpose of considering the motion for summary judgment and based upon the pleadings submitted by the parties, the Court believes the following material undisputed facts appear:

 * On or about October 14, 2004, the plaintiffs' decedents, Koch and Cook, were employees of In-Tents, Inc.

 * On October 14, 2004, in their capacity as employees of In-Tents, Inc., Koch and Cook were helping move a tent owned by In-Tents, Inc.

 * In the process of moving the tent, the employees encountered a temporary mesh fence and attempted to lift the tent over the temporary mesh fence.

 * As it was being lifted over the temporary mesh fence, the tent came into contact with an energized overhead electrical line owned by SWEPCO -- resulting in the fatal electrocution of Koch and Cook.

 * The energized power line in question was at least twenty-five (25) feet above ground level.

 * Prior to the moving of the tent, SWEPCO was not notified verbally or in writing that any function, activity, work, or operation, including the moving of a large tent, would occur within ten feet of the energized electrical line on October 14,

2004.

4.  In support of its motion for summary judgment, SWEPCO argues that plaintiffs cannot succeed on their claim of negligence because they cannot prove that SWEPCO owed a duty to the plaintiffs' decedents. SWEPCO points to **Ark. Code Ann. §§ 11-5-307 and 11-5-308** in support of its argument.

> According to **Ark. Code Ann. § 11-5-307,**
>
> When any person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any energized overhead electric line or conductor than permitted by this subchapter, the person or persons responsible for the work to be done shall promptly notify the Director of the Department of Labor and the operator or owner of the electrical lines in writing of the work to be performed and make appropriate arrangements with the operator of the electrical lines before proceeding with any work which would impair the clearances required by this subchapter.
>
> The written notice shall be given to the owner or operator of the electrical lines by submitting notification to the manager of the nearest local office of the operator or owner of the electrical lines with a copy forwarded to the director.

**Ark. Code Ann. § 11-5-307(a)(1)-(2).**

The relevant subchapter of the Arkansas Code goes on to establish a required clearance of **ten feet** for the performance of any function, activity, work, or operation near electric lines. **Ark. Code Ann. § 11-5-308(a).**

SWEPCO argues that these relevant sections of the Arkansas Code make it clear that any duty of a power company is only

-4-

triggered when it has been given the specific notice described in **Ark. Code Ann. § 11-5-307.** Further, SWEPCO points out that it is undisputed that such notice was not given.

In response, plaintiffs contend that the cited sections of the Arkansas Code are inapplicable; that SWEPCO had a common law duty of care to protect the public; and that the clearance provided prior to the accident was unacceptable because SWEPCO knew or should have known that the subject property was used by the University of Arkansas for cross-country meets and that a particular running event, the Chile Pepper Festival, attracted thousands of people annually to the site.

5. To prove a negligence claim under Arkansas law, the plaintiffs must prove that SWEPCO owed a duty to the plaintiffs' decedents; and, "[t]he question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." Lawhon Farm Supply, Inc. V. Hayes, 870 S.W.2d 729, 730 (Ark. 1994)(citing Keck v. American Employment Agency, Inc., 652 S.W.2d 2 (Ark. 1983)).

Further, the Arkansas courts have established that "electric utility companies must meet the public demand for a ready and adequate supply of power and, in doing so, they are not insurers against accident or injury and are not held liable for such as cannot be reasonably foreseen." Thornton v. Arkansas Valley Elec. Co-op. Corp., 234 S.W.3d 915, 918)(Ark. App. 2006)[citing Clark

v. Transcon. Ins. Co., 197 S.W.3d 449 (Ark. 2004)].

Although "an electric company has a duty to inspect and maintain its power lines in proper and safe working order," (Clark, 197 S.W.3d at 453) Arkansas statutory law provides that "when a person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation within ten feet of an energized, high-voltage line, the electric utility has no duty until the electric utility receives 'written notice' from the 'person or persons responsible for the work' . . . . without such notice, the electric company has no duty to those working near its lines." Thornton, 234 S.W.3d at 918 (citing Ark. Code Ann. § 11-5-307).

Plaintiffs argue that the cited statutory authority does not apply because "[t]his is not a worker's compensation case.". However, they have cited no support for that position -- nor has the Court found any such support.

The Arkansas courts have clearly applied **Ark. Code Ann. §§ 11-5-307 - 308** in similar circumstances, and this Court will follow suit.  See Thornton, 234 S.W.3d 915; Clark, 197 S.W.3d 449 (indicating that Ark. Code Ann. § 11-5-307 is applicable in a similar situation, but finding that notice was effectively provided).  Thus, notwithstanding plaintiffs' contentions about any common law duty, SWEPCO is entitled to rely upon its compliance with applicable statutory provisions in that regard.

6.  Turning now to plaintiffs' argument that the clearance prior to the accident was unacceptable because SWEPCO knew or should have known that the subject property was used by the University of Arkansas for cross-country meets and that the Chile Pepper Festival attracted thousands of people annually to the site, the Court notes the following:

*   The argument seems to imply that use of the property for cross-country meets and a Chile Pepper Festival would necessarily bring "thousands of people annually" within ten (10) feet of the overhead line in question.  In view of the undisputed fact that the power line was twenty-five (25) feet above ground, this implication is unsupportable on its face.

*   If the argument is intended to be advanced by the opinions of plaintiffs' expert, Dr. W.T. Cronewett – to the effect that SWEPCO knew, or should have known, that the staging of events like cross-country meets and Chile Festivals would involve the use of vehicles and tents which would necessitate the moving, burying or raising of power lines -- it is no less supportable in light of the statute in question.  Whether SWEPCO knew of these events or not, those conducting or sponsoring them surely did and had for some 16 years according to Dr. Cronewett.  So knowing, it was the responsibility of those conducting the activities to notify SWEPCO per the statute if those activities would be conducted closer than ten feet to the line in question.

\*  If the Legislature had intended it to be the duty of power line operators to take action because they "knew, or ought to have known" of a dangerous situation rather than -- as it did -- make it the operators' duty to take action only after they had been given written notice of the intended dangerous activity, the Court believes it would have done so.  It did not.

Accordingly, because it is undisputed that written notice required by the statute was not provided to SWEPCO prior to the activities of October 14, 2004, the Court finds that SWEPCO owed no duty to the plaintiffs' decedents.  Thus, for the reasons set forth above, the Court finds that **Southwestern Electric Power Company's Motion for Summary Judgment Against the Plaintiffs** (document #30) should be, and it hereby is, **granted.**

**IT IS, THEREFORE, ORDERED**  that **Southwestern Electric Power Company's Motion for Summary Judgment Against the Plaintiffs** (document #30) should be, and it hereby is, **granted** for reasons stated herein.

**IT IS FURTHER ORDERED** that, in light of the foregoing ruling, plaintiffs' complaint against **Southwestern Electric Power Company** should be, and it hereby is, dismissed.  By separate order of even date herewith, judgment will be entered accordingly.

**IT IS SO ORDERED.**

>                              /s/ Jimm Larry Hendren
>                              JIMM LARRY HENDREN
>                              UNITED STATES DISTRICT JUDGE